## WASTE DISPOSAL INCORPORATED

v.

## TOWN OF PORTER, et al.

Supreme Judicial Court of Maine.

Argued May 5, 1989.
Decided Sept. 11, 1989.

Catherine R. Connors (orally), Rick E. Lawrence, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

F. Paul Frinsko, Catherine O'Connor (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for Town of Porter.

Jeffrey Thaler (orally), Berman, Simmons & Goldberg, Lewiston, for Sacopee People Opposed to Industrial Landfills.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiff, Waste Disposal Incorporated (WDI), seeks to construct and operate a solid waste disposal facility within the Town of Porter (Porter). In July of 1986, WDI submitted an application to the Porter Planning Board (Planning Board) for town review of its development plan under the Porter Land Use Ordinance in effect at the time. In August of 1986, the Planning Board determined that WDI's application was incomplete and declined to review the application under the ordinance in effect at the time it was submitted. The Porter Board of Appeals (Board of Appeals) reject-

ed WDI's appeal and affirmed the decision of the Planning Board. WDI now appeals from the judgment of the Superior Court (Oxford County, *Alexander, J.*) affirming the decision of the Board of Appeals. We affirm the judgment of the Superior Court.

## I.

In 1986, real property development in Porter was governed by the Porter Land Use Ordinance (3d Revision, Mar. 20, 1982) (the "1982 Ordinance"). The 1982 Ordinance required developers to obtain a building permit from the Planning Board. In order to obtain a permit, a developer had to submit an application for town review of a development proposal. Section 4.7(f) of the 1982 Ordinance listed the "Data Requirements" that all development plans had to contain, unless waived by the Planning Board. Section 4.7(c)(5) of the ordinance provided that the Planning Board had thirty days after receiving a "complete application" to act upon the application and that the Planning Board's failure to act within that time constituted approval of the development plan.

On July 31, 1986, WDI appeared at a Planning Board meeting and presented the Board with an application and application fee for review of WDI's development plan (the "Plan") to construct and operate a solid waste disposal facility. The proposed facility, if approved, would include a 5.5 acre "secure disposal area" protected by two layers of an "impervious" liner and a leachate collection and storage system.[1] Minutes of the Planning Board meeting indicate that WDI presented its plan to the Board and that an "[i]nformal discussion followed," including WDI's suggestion that the Planning Board tour an operating landfill.

During August of 1986, WDI held an informational meeting in Porter concerning its proposed facility. Some members of the Planning Board attended that meeting. Later that month, the Selectmen for the Town of Porter posted a warrant for a town meeting to enact a moratorium (the "Porter Moratorium") prohibiting the construction of landfills in Porter for 240 days.[2]

The Planning Board met as scheduled on August 21, 1986. The Planning Board noted that it could not "discuss the substance" of WDI's Plan without first determining that the Plan contained the data required by the 1982 Ordinance or was otherwise complete. Minutes of the meeting indicate that the Planning Board reviewed the Plan to determine whether it complied with the data requirements of section 4.7(f) of the ordinance and concluded that because certain data was missing the Board was unable to review the substance of the Plan. WDI was invited to "resubmit" a complete plan to the Planning Board at the next scheduled meeting.

At a special town meeting held on the evening of August 26, 1986, the Porter Moratorium as published in the warrant was adopted by the Town's voters. The Moratorium prohibited Porter from accepting applications or approving plans for landfill operations for a period not exceeding 240 days from the enactment of the Moratorium. The Porter Moratorium, by its express terms, did not apply to any application that had already been "accepted" by the Planning Board.

In September of 1986, WDI filed a notice of appeal to the Board of Appeals from the Planning Board's determination that WDI's application for review was not complete and pending prior to the enactment of the Porter Moratorium.[3] After a delay resulting from a statewide moratorium prohibiting the Department of Environmental Pro-

---

1. Leachate is generated by precipitation or other liquids passing through or emerging from solid waste deposited in a landfill.

2. The moratorium was proposed pursuant to the authority granted by 30 M.R.S.A. §§ 1917, 2151, 4962-B (1978 & Pamph.1988) and, as stated in the warrant, was a direct response to the "emergency" created by WDI's Plan and the absence

of rules governing landfills in certain districts in Porter.

3. WDI's appeal from the Planning Board decision was heard by the Porter Board of Appeals pursuant to that Town's Land Use Ordinance. Porter, Me., Land Use Ordinance § 4.7(e)(2) (Mar. 20, 1989).

tection from acting on applications to operate landfills, see 38 M.R.S.A. § 1310–V (1989), WDI renewed its appeal and a hearing was held before the Board of Appeals.[4] The Board found that WDI and the Planning Board had engaged in an "informal discussion" of WDI's Plan and that the Planning Board later determined that WDI's Plan was "incomplete" because certain required data was missing from the plan. The Board of Appeals concluded that the Planning Board had "correctly applied the provisions of the [1982 Ordinance]."

Pursuant to M.R.Civ.P. 80B, WDI appealed to the Superior Court from the decision of the Board of Appeals. The Superior Court affirmed the decision of the Board of Appeals, finding, inter alia, that the Planning Board correctly applied local and state law and that WDI did not have a vested right to have its Plan reviewed under the 1982 Ordinance. This appeal followed.

## II.

WDI first argues that its application was "pending" within the meaning of the grandfathering provision of 1 M.R.S.A. § 302 (1989) and, therefore, entitled to review under the ordinance in effect at the time it was submitted. The version of section 302 in effect at the time WDI submitted its application for town review, see P.L.1973, ch. 146, did not define when an application was "pending." The current version of 1 M.R.S.A. § 302 is more expansive,[5] and provides in relevant part: "Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." A "proceeding" includes an application for a license or permit required at the time of its filing. Id. An application is considered a "pending proceeding when the reviewing authority has conducted at least one substantive review of the application and not before." Id. "Substantive review" of an application is defined as "a review of that application to determine whether it complies with the review criteria and other applicable requirements of law." Id. The statutory language of the current version of 1 M.R.S.A. § 302 is consistent with our interpretation of the prior version of the statute. Maine Isle Corp. v. Town of St. George, 499 A.2d 149, 152 (Me.1985); Littlefield v. Inhabitants of Town of Lyman, 447 A.2d 1231, 1235 (Me.1982).

In Maine Isle, we found that an application was pending once the planning board acted on the substance of a development proposal by discussing the proposal and voting on whether it satisfied a requirement of the applicable ordinance. 499 A.2d at 152. In Littlefield, we said that the mere "presentment of a plan to a municipal clerk or board may not, in and of itself, result in a pending application under [section 302]." 447 A.2d at 1235. We recognized that a municipality can screen a plan for the adequacy of the information required by the relevant land use ordinance without bestowing "pending" status on the plan. See id. at 1235 n. 5.

The Board of Appeals found that WDI presented copies of the Plan at the July 31,

---

4. On March 21, 1987, while the Porter Moratorium was in effect, the 1982 Land Use Ordinance was revised. WDI maintains that the revised ordinance, if applied, would require WDI to satisfy new criteria and restrictive standards not contained in the 1982 Ordinance. Section 1.4(d) of the revised ordinance provides that "[a]ny application pending at the time of adoption of this Ordinance shall be exempt from the provisions of this Ordinance." On September 21, 1987, the day the Porter Moratorium expired, Porter enacted a Solid Waste Disposal Ordinance (the "Solid Waste Ordinance"). The Solid Waste Ordinance is silent with respect to whether it applies to pending applications. The Solid Waste Ordinance imposed new review and approval standards and procedures for the development of solid waste landfills in Porter,

standards that apparently would be more difficult for WDI to meet. WDI did not seek approval of its Plan under the revised ordinance or the Solid Waste Ordinance.

5. The current version of 1 M.R.S.A. § 302 (1989) was intended to apply to "any existing situations." L.D. 2317, Committee Amendment A, Statement of Fact (113th Legis.1988). WDI's July 31, 1986 application for town review was submitted before August 4, 1988, the effective date of the current version of section 302. Even assuming that the application was not an "existing situation[ ]" triggering the application of the current version of section 302, we reach the same result in this case applying either the prior version or the current version of section 302.

1986 meeting and that there was "an informal discussion of various aspects of the landfill proposal lasting between 30–40 minutes." The Board of Appeals also found that on August 21, 1986, the Planning Board determined that certain data required by section 4.7(f) of the 1982 Ordinance was missing or inadequate. The Board of Appeals concluded that the Planning Board correctly applied the 1982 Ordinance when it determined that the Plan was incomplete. We find no error in the findings of the Board of Appeals.

■ WDI's Plan was not "pending" as a matter of law within the meaning of 1 M.R.S.A. § 302 on July 31, 1986. We cannot say on this record that the Planning Board's action on July 31 constituted a substantive review of the Plan. At the meeting, WDI presented its Plan to the Planning Board for the first time. The simple presentation of the Plan to the Planning Board did not make the Plan a "pending application." *Littlefield*, 447 A.2d at 1235. Similarly, the initial review conducted by the Planning Board on August 21, 1986 to determine whether the Plan was complete did not constitute substantive review.[6] *See id.* at 1235 n. 5. Because WDI's Plan was not pending before the Planning Board during the effective dates of the 1982 Ordinance, the Board was not required to review the Plan under that Ordinance.

## III.

■ We reject WDI's additional contention that it acquired "vested rights" to have its Plan reviewed under the 1982 Ordinance, the ordinance in effect at the time the Plan was submitted for review.[7] No vested rights were acquired by WDI solely because it incurred expenses in preparing and submitting its application. *Portland v. Fisherman's Wharf Assocs.*, 541 A.2d 160, 164 (Me.1988); *Thomas v. Zoning Bd. of Appeals of City of Bangor*, 381 A.2d 643, 646–47 (Me.1978). Nor has WDI demonstrated that the Planning Board acted in bad faith in delaying passing on WDI's application, or that the Town acted in bad faith in enacting the Porter Moratorium, the revisions to the 1982 Ordinance and the Solid Waste Ordinance. *Thomas*, 381 A.2d at 646–47.

The entry is:

Judgment affirmed.

All concurring.

6. WDI argues that the express terms of the 1982 Ordinance did not *preclude* the Planning Board from engaging in a substantive review of its Plan until the Board found that the Plan was complete. The ordinance, however, does not expressly *require* the Planning Board to review an incomplete application.

Section 4.7(f) of the 1982 Ordinance lists nineteen "Data Requirements" that must be included in every development plan submitted for Planning Board review. Section 4.7(c)(4) provides that "[a]ll *complete* Development Plans shall be reviewed by the Planning Board...." (Emphasis added). Section 4.7(c)(5) provides in relevant part:

Within thirty (30) days of receiving a *complete application,* including the data requirements specified in [section 4.7(f),] the Planning Board shall approve, approve with modifications or conditions, deny approval to, or schedule a Public Hearing on a Development Plan submitted in accordance with this ordinance. Failure of the Planning Board to act within the specified thirty (30) days shall constitute approval of the Development Plan. (Emphasis added).

The 1982 Ordinance thus contemplates Planning Board review of "complete" plans. Once a plan is complete, the Planning Board must either approve, approve with modifications, or deny approval of the plan or schedule a public hearing. If the Planning Board fails to act, the plan is, by default, approved. If the Planning Board were required to engage in a substantive review of an incomplete plan, the ordinance would lead to the absurd result that the Board would have only 30 days to approve or deny a plan without the benefit of data or other essential information necessary to assess the impact of the development plan.

7. Contrary to the arguments raised by appellee Sacopee People Opposing Industrial Landfills, WDI preserved this issue for appellate review.