2004 ME 65

**KITTERY RETAIL VENTURES,
LLC et al.**

v.

**TOWN OF KITTERY.**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2003.
Decided: May 11, 2004.

Durward W. Parkinson (orally), Susan B. Driscoll, Leah B. Rachin, Bergen & Parkinson, LLC, Kennebunk, U. Charles Remmel II (orally), Kelly, Remmel & Zimmerman, Harold J. Friedman, Michelle Giard, Friedman Gaythwaite Wolf & Leavitt, Portland, for plaintiffs.

William H. Dale (orally), Sally J. Daggett, Jensen Baird Gardner & Henry, Portland, Duncan A. McEachern, McEachern & Thornhill, Kittery, for defendant.

Robert S. Frank, Harvey & Frank, Portland, for amicus curie New England Legal Foundation.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Kittery Retail Ventures, LLC, DSS Land Holdings, LLC, and Stephen A. Hynes (collectively KRV) appeal from the judgments of the Superior Court (York, *Fritzsche, J.*) entered in favor of the Town of Kittery on both counts of KRV's complaint. KRV contends that the Superior Court erred when, in an appeal KRV had brought pursuant to M.R. Civ. P. 80B, it affirmed the Kittery Planning Board's decision to apply the terms of the zoning ordinance amendment enacted in September of 2000 to deny KRV's permit application. KRV also contends that the court erred when it entered a summary judgment in favor of the Town on Count II of

KRV's complaint, seeking a declaratory judgment that the September amendment could not be applied against KRV. We affirm the judgments.

## I. BACKGROUND

[¶ 2] In early 1999, KRV began negotiations with DSS Land Holdings, LLC, and Stephen A. Hynes, trustee of Real Property Trust Agreement, to purchase two parcels of adjoining land located close to Route 1 in Kittery. At that time, the land was located in a mixed-use district, and pursuant to the Town's zoning ordinance, up to thirty percent of the land could be applied to retail use, and the land was eligible for the transfer of retail development rights.[1] KRV's intent was to purchase the land and build Kittery Marketplace, a 250,000–square–foot retail outlet mall. In July 1999, KRV met with Kittery's town manager and town planner and presented preliminary sketches of the proposed development. On January 13, 2000, KRV filed a sketch plan with the Planning Board, and on March 23, 2000, KRV filed a site plan application and tendered its application fee. The Board requested additional information regarding KRV's application on April 13, April 27, and June 7, 2000.

[¶ 3] During this time period, there was activity in the Town regarding changes to mixed-use districts. The Town Council discussed the use of mixed-use districts and the transfer of retail development rights during several meetings between February and July 2000. On March 6, 2000, a proposed emergency ordinance to amend the mixed-use district and eliminate the availability of transferred retail development rights failed of passage at a Town Council meeting. On March 27, 2000, a citizen group filed a petition for a citizen vote on the enactment of an ordinance that would amend the mixed-use district provisions of the Town's zoning ordinance and eliminate the availability of transferred retail development rights.

[¶ 4] The citizen-proposed amendment to the zoning ordinance altering the requirements in the mixed-use district by reducing the retail coverage area from thirty to fifteen percent and eliminating the availability of transferred retail development rights was approved by the voters on June 13, 2000. Pursuant to the Kittery Town Charter, the effective date of the zoning ordinance amendment was July 14, 2000.

[¶ 5] After the June amendment was enacted, but before its effective date, KRV submitted a revised preliminary plan application to the Board, and on June 29, 2000, the town planner notified KRV that its application had met the submission requirements. On July 13, 2000, one month after the June ordinance was enacted, the Board voted unanimously to approve, as substantially complete, the site plan for the Kittery Marketplace and accepted the application for review. A public hearing regarding the Kittery Marketplace was held on August 23, 2000.

[¶ 6] On September 26, 2000, the voters approved another amendment to the zoning ordinance, which mirrored the language of the June zoning ordinance amendment, but added the following language:

> Notwithstanding the provisions of 1 M.R.S.A. § 302, and regardless of the date on which it is approved by the voters, this amendment shall be effective

---

1. According to section 16.12.130 of the zoning ordinance, the transfer of retail development rights allows for the development of a "few well-designed, multistore retail projects ... rather than ... a proliferation of individual retail stores on individual parcels." Kittery, Me., Land Use and Development Code Zoning Ordinance § 16.12.130(D)(9) (May 1998). One site is allowed to shift its future retail development potential to another site, thereby increasing the amount of retail development area on the receiving site. *Id.*

as of September 30, 1999, and shall govern any and all applications for permits or approvals required under the Land Use and Development Code of the Town of Kittery, Maine that were or have been pending before any officer, board, or agency of the Town of Kittery on or at any time after September 30, 1999. On October 26, 2000, the town planner notified KRV that the September amendment would apply to KRV's proposed project. In response, KRV filed a complaint in Superior Court, requesting review of the Board's decision, a declaratory judgment, and injunctive relief. The Superior Court dismissed the complaint without prejudice, holding that the October 26, 2000 communication from the town planner to KRV did not constitute a final decision of the Board, and remanded the case back to the Board. The Board met on May 9, 2002, and formally denied KRV's development application on the basis that it did not comply with the zoning ordinance as amended by the September amendment.

[¶ 7] In response, KRV filed a two-count complaint in the Superior Court. In Count I, KRV alleged that the Board's decision was arbitrary, capricious, and unlawful, and requested Superior Court review pursuant to M.R. Civ. P. 80B. In Count II, KRV requested a declaratory judgment that the terms of the September amendment could not be applied to its application based on various legal and equitable principles.

[¶ 8] KRV filed a motion for a summary judgment on Count II, but pursued Count I through a hearing. Following that hearing, the Superior Court affirmed the Board's decision to apply the terms of the

September zoning ordinance amendment to KRV's application. The court also entered a summary judgment for the Town on Count II, the declaratory judgment action. KRV subsequently filed this appeal.

[¶ 9] KRV contends that the Superior Court erred when it concluded that: nothing in the Kittery Town Charter prohibits retroactive legislation; KRV did not acquire vested rights because it did not begin construction and no bad faith existed; the referendum did not violate due process because it furthers legitimate legislative purposes and is rational; the Town was not equitably estopped from applying the referendum because KRV did not prove reasonable reliance on the town planner's opinion or the silence of other Town officials; and the Town did not violate the Contract Clause of the Maine and United States Constitutions. We agree with KRV that a portion of the September amendment violates the Town Charter, but because the offending portion can be severed from the remainder of the amendment, and the remaining portion of the September amendment includes a retroactivity provision that validly applies to KRV's application, we affirm the judgments.[2]

## II. DISCUSSION

### A. The Town Charter

[¶ 10] The interpretation of an ordinance is a question of law and is reviewed de novo. *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427. When interpreting the terms of an ordinance, we look first to the plain meaning of the terms in an effort to give effect to the legislative intent. *Griffin v.*

---

**2.** KRV also appeals from the Superior Court's judgment entered on Count I of its complaint. KRV does not dispute the Board's conclusion that its application does not comply with the terms of the September amendment, but contends that the terms of the September amend-

ment cannot be applied to its application. Because we conclude that the terms of the September amendment do apply to KRV's application, we affirm the Superior Court's affirmance of the Planning Board's denial of KRV's application in KRV's Rule 80B appeal.

*Town of Dedham,* 2002 ME 105, ¶ 7, 799 A.2d 1239, 1242.

■ [¶ 11] At the outset, we make the distinction between when an ordinance or statute is retroactively *applied* and when an ordinance or statute becomes *effective.* An ordinance is retroactively *applied* " 'when *applied* so as to determine the legal significance of acts or events that occurred prior to its *effective* date.' " *Coates v. Me. Employment Sec. Comm'n,* 406 A.2d 94, 96 (Me.1979) (emphasis omitted in part) (quoting *State Comm'n on Human Relations v. Amecon Div. of Litton Sys., Inc.,* 278 Md. 120, 360 A.2d 1, 3–4 (1976)). We have regularly discussed ordinances and statutes that affected events that occurred prior to the ordinance or statute's effective date. *E.g., Portland Sand & Gravel, Inc. v. Town of Gray,* 663 A.2d 41, 42 (Me.1995); *Morgan–Leland v. Univ. of Me.,* 632 A.2d 748, 748 (Me.1993).

[¶ 12] When a statute becomes effective, however, is more of a procedural matter and is governed, for state statutes, by ME. CONST. art. IV, pt. 3, § 16.[3] The effective date of ordinances passed in Kittery is governed by section 2.14(3) of the Kittery Town Charter, which provides: "Except as otherwise provided in this charter, *every adopted ordinance shall become effective at the expiration of 30 days after adoption or at any later date specified therein.*"[4] Kittery, Me., Town Charter § 2.14(3) (1967) (emphasis added).

■ [¶ 13] Just as the Legislature does not violate ME. CONST. art. IV, pt. 3, § 16 when it enacts statutes with retroactive applicability, *State v. L.V.I. Group,* 1997 ME 25, ¶¶ 1, 6, 690 A.2d 960, 962, 963 (upholding the retroactive application of an amendment to 26 M.R.S.A. § 625–B); *City of Portland v. Fisherman's Wharf Assocs. II,* 541 A.2d 160, 164 (Me.1988) (recognizing the Legislature's ability to enact statutes with retroactive application); *Opinion of the Justices,* 460 A.2d 1341, 1347 (Me. 1982), the September amendment does not violate section 2.14(3) of the Town Charter simply because it *applies* retroactively.

[¶ 14] Nonetheless, the language in the September amendment goes further than the language in the typical retroactive ordinance or statute. For example, when it enacted 39–A M.R.S.A. § 224 (Supp.2003), the Legislature stated: " 'This Act applies retroactively to benefit calculations made under the Maine Revised Statutes, former title 39, sections 55 and 55–A at any time after January 1, 1972, and applies notwithstanding any adverse order or decree.' " *Bernier v. Data Gen. Corp.,* 2002 ME 2, ¶ 15, 787 A.2d 144, 149 (quoting P.L. 2001, ch. 390, § 2). The Legislature stated its intent to apply section 224 retroactively, but did not adjust the effective date of the statute, which remained September 21, 2001. *Id.*

[¶ 15] The same can be said for 23 M.R.S.A. § 156 (1992 & Supp.2003), which reads: "Notwithstanding Title 1, section

3.  ME. CONST. art. IV, pt. 3, § 16 provides:
    No Act or joint resolution of the Legislature, except such orders or resolutions as pertain solely to facilitating the performance of the business of the Legislature, of either branch, or of any committee or officer thereof, or appropriate money therefor or for the payment of salaries fixed by law, shall take effect until 90 days after the recess of the session of the Legislature in which it was passed, unless in case of emergency, which with the facts constituting the

emergency shall be expressed in the preamble of the Act, the Legislature shall, by a vote of 2/3 of all the members elected to each House, otherwise direct.

4.  The Town does not contend that the September amendment was passed as an emergency ordinance; if it had been, it would have become "effective upon adoption or at such later time as it may specify." Kittery, Me., Town Charter § 2.15 (1967).

302, this section applies to all actions and proceedings pending on September 14, 1979." By adding the retroactivity provision, the Legislature clearly expressed an intent for retroactive application without adjusting the effective date of the amendment.

[¶ 16] The language in the September amendment goes beyond the language in most retroactive ordinances or statutes because not only does it purport to apply retroactively by affecting the consequences of actions taken prior to its effective date, it explicitly purports to become *effective* retroactively. The text of the September amendment reads:

> Notwithstanding the provisions of 1 M.R.S.A. § 302, and regardless of the date on which it is approved by the voters, this amendment *shall be effective as of September 30, 1999,* and shall govern any and all applications for permits or approvals required under the Land Use and Development Code of the Town of Kittery, Maine that were or have been pending before any officer, board, or agency of the Town of Kittery on or at any time after September 30, 1999.

(Emphasis added.)

[¶ 17] We have previously stated that town ordinances must conform to town charters; the relationship between the two is the same as the relationship between statutes and constitutions. *Farris ex rel. Anderson v. Colley,* 145 Me. 95, 99, 73 A.2d 37, 39 (1950) (quoting 5 McQUILLAN, LAW OF MUNICIPAL CORPORATIONS § 15.19 (3d ed. 1949)). Because the September amendment becomes effective before "the expiration of 30 days after adoption or at any later date specified therein," it directly violates the Town Charter. Accordingly, we conclude that the provision of the September amendment that establishes a retroactive effective date is void.

B. Severability

[¶ 18] An invalid portion of a statute or an ordinance will result in the entire statute or ordinance being void only when it is such an integral portion of the entire statute or ordinance that the enacting body would have only enacted the legislation as a whole. *Bayside Enters., Inc. v. Me. Agric. Bargaining Bd.,* 513 A.2d 1355, 1360 (Me.1986). There are two reasons why the portion of the September amendment that establishes a retroactive effective date may be severed from the remainder of the amendment. First, although the portion of the September amendment that establishes a retroactive effective date is void, Kittery's Land Use and Development Code Zoning Ordinance contains a severability provision, which reads:

> In the event that any section, subsection or any portion of this title shall be declared by any court of competent jurisdiction to be invalid for any reason, such decision shall not be deemed to affect the validity of any other section, subsection or other portion of this title; to this end, the provisions of this title are declared to be severable.

Kittery, Me., Land Use and Development Code Zoning Ordinance § 16.04.080 (May 1998). A provision such as section 16.04.080 is an indication that no portion of the ordinance is so integral that its invalidity must invalidate any other portion of the ordinance. *See Begin v. Town of Sabattus,* 409 A.2d 1269, 1274 (Me.1979).

[¶ 19] Second, the wording of the September amendment demonstrates that the retroactive paragraph serves two purposes. One purpose is to make the amendment's effective date retroactive; a separate and independent purpose is to apply the amendment retroactively. If the portion of the amendment establishing retroactive applicability is valid and indepen-

dent, it may stand. *Lambert v. Wentworth*, 423 A.2d 527, 535 (Me.1980).

[¶ 20] Generally, "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." 1 M.R.S.A. § 302 (1989); *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627 (Me.1994). Nevertheless, section 302 is a rule of statutory construction, and does not apply when there is clear and unequivocal language that the statute or ordinance applies to pending proceedings. *Riley*, 639 A.2d at 627.

[¶ 21] In this case, the September amendment contains clear and unequivocal language applying it to pending proceedings. *Bernier*, 2002 ME 2, ¶ 16, 787 A.2d at 150 ("Legislation expressly citing section 302, or explicitly stating an intent to apply a provision to pending proceedings, is sufficient to overcome the general rule of section 302."). The September amendment expressly cites section 302 and explicitly states an intent to apply the amendment to pending proceedings. Therefore, the portion of the amendment establishing retroactive application is valid, serves an independent purpose, and can be severed from the portion of the amendment establishing a retroactive effective date.

[¶ 22] There is no dispute that KRV did not have an application pending prior to September 30, 1999, nor does KRV challenge the Board's conclusion that KRV's application does not comply with the terms of the September amendment. Accordingly, we conclude that the September amendment, which became effective thirty days after it was adopted, pursuant to section 2.14(3) of the Town Charter, and retroactively applies to proceedings pending on or after September 30, 1999, operates to require denial of KRV's application.

## C. Equitably Acquired Vested Rights

[¶ 23] KRV contends that the September amendment cannot be retroactively applied to require denial of its application because there is evidence that the September amendment was enacted in bad faith and with the sole purpose of preventing KRV from continuing with its project. KRV contends that because of the existence of bad faith, KRV equitably acquired vested rights to pursue its development in accordance with the terms of the ordinance that existed when KRV filed its application.

[¶ 24] Generally, neither the submission of a development application, nor the issuance of a development permit, establishes vested rights. *Thomas v. Zoning Bd. of Appeals*, 381 A.2d 643, 647 (Me.1978). This is because " 'all property is held in subordination to the police power.' " *Id.* (quoting *R.A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 289 A.2d 646, 648 (1972)). Although a party may acquire vested rights as a result of equitable considerations, mere reliance on the language of an existing ordinance, or the incurrence of preliminary expenses to satisfy application requirements, is not sufficient to establish vested rights. *Sahl v. Town of York*, 2000 ME 180, ¶ 13, 760 A.2d 266, 270. We have recognized, however, that "bad faith or discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the applicant may confer vested rights on the applicant." *Thomas*, 381 A.2d at 647.

[¶ 25] Although we have recognized that a party may equitably acquire vested rights, parties have had difficulty in proving the requisite bad faith or discriminatory enactment. In *Waste Disposal Inc. v. Town of Porter*, the plaintiff filed an application to construct a solid waste disposal facility. 563 A.2d 779, 779 (Me.1989). After Waste Disposal filed its application, the Town voters enacted a moratorium in di-

rect response to Waste Disposal's plan. *Id.* at 780 & n. 2. There was evidence that the moratorium was necessary because there was an absence of rules governing landfills. *Id.* at 780 n. 2. While the moratorium was in effect, the Town amended the land use ordinance, and later, enacted a solid waste ordinance. *Id.* at 781 n. 4. We found that Waste Disposal failed to demonstrate that the Town acted in bad faith when it enacted the moratorium and subsequent amendments to the town ordinance. *Id.* at 782.

[¶ 26] In *Fisherman's Wharf Assocs. II,* we held that Fisherman's Wharf Associates failed to prove bad faith or discriminatory enactment when it filed its permit application two months after the proposed ordinance amendment had been filed. 541 A.2d at 161, 164. Similarly, there was no indication of bad faith in *Thomas,* when the Bangor Planning Department had been working on a new ordinance far before Thomas filed his permit application. 381 A.2d at 644, 647. The new ordinance was a complete revision of the prior ordinance and was plainly not directed at Thomas's application. *Id.* at 647.

[¶ 27] Although a party may equitably acquire vested rights by showing bad faith or discriminatory enactment, the surrounding circumstances must be more severe than the circumstances presented in this case. Because KRV is requesting an equitable remedy, its knowledge of the situation must be taken into account. *See Thomas v. Fales,* 577 A.2d 1181, 1183 (Me. 1990). In this case, there is evidence that discussions regarding the mixed-use districts started taking place during Town Council meetings shortly after KRV filed its sketch plan and before it filed its plan application. Although KRV filed its application before the petition to enact the June ordinance amendment was filed, the petition was filed almost two months before KRV entered into its purchase and sale

agreement with Hynes. The petition had been filed weeks before KRV contends that it made substantive changes to its plan in order to comply with requests from the Board. KRV also had actual notice of the pending amendment when the attorney for the citizen group advised KRV of the proposed changes in May.

[¶ 28] In addition to considering KRV's knowledge of the pending amendment and opposition to the development, we also consider the lack of evidence of bad faith on the part of the town officials. This is not a case in which every time the developers complied with a request, town officials "hastily erected barriers." *Commercial Props., Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514, 519 (1965). In *Commercial Properties,* the Pennsylvania Supreme Court concluded that the rezoning ordinance did not apply against the plaintiffs because it was special legislation, aimed at the plaintiff's property, and there was evidence that while the plaintiffs attempted to secure a grading permit so that they could obtain a building permit, the township officials changed the law so that a building permit was required in order to obtain a grading permit. *Id.* at 518–19.

[¶ 29] Similarly, in *United States Cellular Corp. v. Bd. of Adjustment,* the Iowa Supreme Court found bad faith when the Board denied the plaintiff's application without any legal justification, and the resulting delay provided the Board with time to enact a new ordinance that prohibited the requested use. 589 N.W.2d 712, 719 (Iowa 1999). Likewise, in *State ex rel. Humble Oil & Refining Co. v. Wahner,* the Wisconsin Supreme Court found that equitable considerations prevented the Town of Allouez from applying an amended zoning ordinance when the plaintiff's application was repeatedly denied, and one month after the plaintiff commenced certiorari and mandamus proceedings, the Town amend-

ed the zoning ordinance so as to prohibit the plaintiff's requested use of the area. 25 Wis.2d 1, 130 N.W.2d 304, 311–12 (1964).

[¶ 30] Finally, in *Whitehead Oil Co. v. City of Lincoln*, the planning commission delayed approving the plaintiff's permit until the city council changed the parcel's zoning designation so as not to allow the requested use. 515 N.W.2d 390, 395–96 (Neb.1994). The Nebraska Supreme Court held that the City acted arbitrarily and capriciously and held that the zoning change did not promote the general welfare, but was simply a reaction to the concerns of the citizens. *Id.* at 400. The court noted that "the neighborhood association's express objective to prevent the construction of a convenience store should not be imputed to the city," but disapproved the delay on the part of city officials "so as to allow the change of zoning request to 'catch up' with the use permit such that the two could be considered in conjunction with each other." *Id.*

[¶ 31] There is no evidence that the Kittery Planning Board engaged in delaying tactics, nor is there other evidence of bad faith on the part of any town official. *See Commercial Props.*, 211 A.2d at 518–19; *United States Cellular Corp.*, 589 N.W.2d at 719; *Humble Oil & Refining*, 130 N.W.2d at 311; *Whitehead Oil*, 515 N.W.2d at 400. That fact, in conjunction with KRV's knowledge of the pending ordinance changes, leads us to conclude that this is not the case in which equity demands that KRV acquire vested rights.

D. Due Process

■■■ [¶ 32] KRV also contends that the September amendment violates the Due Process Clauses [5] because the retroactivity provision does not serve a legitimate government interest; its sole purpose is to target and defeat a particular project. In analyzing a due process claim that involves the deprivation of a property interest, courts must first determine whether the plaintiff was deprived of a protectable property interest, and second, whether that deprivation was accomplished by " 'means that were pretextual, arbitrary and capricious, and ... without any rational basis.' " *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1379 (11th Cir. 1994) (quoting *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982)). Vested rights may "constitute property subject to the arbitrary and capricious substantive due process protections." *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 614 (11th Cir.1997). KRV cannot contend that it legally acquired vested rights because it did not begin construction. *Sahl*, 2000 ME 180, ¶¶ 12–13, 760 A.2d at 269–70. Because we have concluded that KRV did not equitably acquire vested rights, KRV does not have a protectable property interest, and therefore, its due process claim must fail. *Reserve, Ltd.*, 17 F.3d at 1379.

E. Equitable Estoppel

■■■ [¶ 33] KRV also contends that the Town is equitably estopped from applying the September amendment to its project because the town planner made representations that KRV's application would be safe from any changes to the zoning ordinance and because the Board worked into the night on July 13, 2000, in order to complete the final review of KRV's application before the June amendment came into effect on July 14, 2000. KRV contends that it reasonably relied on the representations of the town planner and the

---

5. "No person shall be deprived of life, liberty or property without due process of law ...." ME. CONST. art. 1, § 6–A. "[N]or shall any State deprive any person of life, liberty, or property, without due process of law ...." U.S. CONST. amend. XIV, § 1.

**1194**

actions of the Board when it expended resources in furtherance of its project.

■ [¶ 34] When reviewing an equitable estoppel claim, we review the totality of the circumstances, "including the nature of the government official or agency whose actions provide the basis for the claim and the governmental function being discharged by that official or agency." *F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 860 (Me.1992). KRV must prove that (1) the statements or conduct of the town planner or Board induced KRV to act; (2) the reliance was detrimental; and (3) the reliance was reasonable. *Id.* Moreover, because it seeks to estop the enforcement of a zoning ordinance, and "[f]orceful policy reasons militate against restricting the enforcement of municipal zoning ordinances," KRV bears a greater burden. *City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 715 (Me.1990).

[¶ 35] The facts, even when construed in the light most favorable to KRV, do not support an equitable estoppel claim. First, the Board did not make any misleading statements to KRV. The Board never assured KRV that its project was safe from amendments to the zoning ordinance. It never determined that the application met any of the zoning ordinance's substantive requirements; it only determined that the application met the submission requirements for a complete application. Even if the Board undertook its late-night review with the purpose of insulating KRV's project from the June amendment, it did not purport to insulate the project from subsequent amendments.

[¶ 36] Second, although KRV contends that the Town's silence was misleading, there is evidence that the Town was not silent; shortly after the September amendment was passed, the town planner

notified KRV that the amendment would apply to its project. Finally, even if the statements made by the town planner did induce KRV to act in detrimental reliance, thereby satisfying the first two elements, the reliance was not reasonable. In *F.S. Plummer,* we noted that "[r]eliance on oral unauthorized representations of a municipal official, where a written building permit is required for a project, is unreasonable as a matter of law." 612 A.2d at 861. The town planner was not authorized to insulate KRV's project from amendments to the zoning ordinance. The planner was not even authorized to formally accept KRV's application for review. Therefore, KRV's equitable estoppel claim also must fail.

**F. Contract Clause**

[¶ 37] Finally, KRV contends that the September amendment violates the Contract Clauses of the Maine and United States Constitutions[6] because (1) there were pre-existing contracts between KRV and DSS Land Holdings, LLC, and between KRV and Hynes; (2) the September amendment impaired those relationships because it changed the permitted use of the land at issue; and (3) the impairment was substantial because DSS Land Holdings, LLC and Hynes lose the value of the land sales (a combined $10.2 million) and KRV loses the value of the profits that would have been gained from the proposed project. KRV further contends that there was no "important public purpose" to the September amendment because its sole purpose was to target KRV's project.

■ [¶ 38] The threshold inquiry when analyzing a Contract Clause claim is whether the legislation resulted in a " 'substantial impairment of a contractual rela-

6. "No State shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S. Const. art. I, § 10, cl. 1. "The Legislature shall pass no ... law impairing the obligation of contracts ...." Me. Const. art. I, § 11.

tionship.'" *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). There are three parts to this analysis: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* The "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment." *Energy Reserves Group, Inc. v. Kan. Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). If there has been a substantial impairment, then the inquiry becomes whether the impairment is justified as "reasonable and necessary to serve an important public purpose." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 25, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Finally, the adjustment of the parties' contractual rights and responsibilities "must be [based] upon reasonable conditions" and be "of a character appropriate" to the purpose of the legislation. *Id.* at 22, 97 S.Ct. 1505. Unless the State, or in this case the municipality, is a contracting party, courts will defer to the judgment of the Legislature regarding necessity and reasonableness. *Energy Reserves Group,* 459 U.S. at 412–13, 103 S.Ct. 697.

[¶ 39] The Town concedes that there were existing contracts and that the September amendment impaired those contractual relationships. There are three reasons, however, why KRV's contractual relationships were not substantially impaired. First, when considering whether a party's contractual relationships were substantially impaired, courts focus on whether the subject matter of the contract is heavily regulated. *N.A. Burkitt, Inc. v. J.I. Case Co.,* 597 F.Supp. 1086, 1091 (D.Me.1984). When regulation already exists, it is foreseeable that changes in the law may alter contractual obligations. *En-*

*ergy Reserves Group,* 459 U.S. at 416, 103 S.Ct. 697. As Justice Holmes stated, "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." *Hudson County Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828 (1908); *see also N.A. Burkitt, Inc.,* 597 F.Supp. at 1092 (holding that a statutory amendment did not violate the Contract Clause when it did not alter the ability of a party to terminate an agreement, but merely changed the procedure, and the parties were already subject to regulation when they entered into their agreement). In Maine, land use is an area that has traditionally been regulated by the state and municipalities. *See* 30–A M.R.S.A. §§ 4301–4457 (1996 & Supp.2003) (planning and land use regulations); *id.* §§ 4323, 4352 (providing municipalities with authority to develop growth management programs and zoning ordinances).

[¶ 40] Second, KRV's contracts with DSS Land Holdings, LLC and Hynes demonstrate that the parties contemplated that KRV might not be able to obtain all necessary permits and approvals. If KRV could not obtain the necessary permits and approvals, the closings would not occur. Similar situations were present in *Energy Reserves Group* and in *KHK Assocs. v. Dep't of Human Servs.,* 632 A.2d 138 (Me. 1993). In *Energy Reserves Group,* the United States Supreme Court held that the reasonable expectations of the parties were not impaired when their contracts were structured in a manner that recognized that the regulation of gas prices might affect contractual obligations. 459 U.S. at 415–16, 103 S.Ct. 697. In *KHK Assocs.,* we held that the Contract Clause was not violated when the lease between the Department of Human Services and KHK Associates was subject to legislative

appropriation and the Legislature did not appropriate funds for the lease. 632 A.2d at 141.

■ [¶ 41] Finally, KRV does not contend that the September amendment changed its rights or obligations; it only contends that the amendment reduced the property values and resulted in lost profits.[7] Substantial impairment does not occur when a change in law does not affect the express terms of the contract or the obligations of the parties, but only affects the underlying subject matter of the contract. *Northwestern Nat'l Life Ins. Co. v. Tahoe Reg'l Planning Agency,* 632 F.2d 104, 106–07 (9th Cir.1980) (holding that a comprehensive land use ordinance did not violate the Contract Clause when it reduced the value of assessed lands and deferred payment of underlying assessments); *Schenck v. City of Hudson,* 997 F.Supp. 902, 907–08 (N.D.Ohio 1998) (holding that a growth ordinance did not violate the Contract Clause because it did not directly affect the parties' contracts, but incidentally impaired them), *aff'd,* 208 F.3d 215 (6th Cir.2000).

[¶ 42] Land use was a regulated field when KRV entered into the contracts, the contract language makes clear that KRV knew of those regulations, and the amendment affected only the underlying subject matter of the contracts. Accordingly, KRV's Contract Clause claim also fails. As a result, the September amendment operates to require denial of KRV's application.

7. KRV cites *Portland Sav. Bank v. Landry,* 372 A.2d 573, 576 (Me.1977) for the proposition that "where a statute lessens the value of a contract to the parties, the constitutional prohibition has been violated." Although portions of *Portland Sav. Bank* remain good law and we have not explicitly overturned our decision, *Portland Sav. Bank* was written be-

The entry is:

Judgments affirmed.

fore the United States Supreme Court's decision in *Energy Reserves Group,* and *Energy Reserves Group* substantially changed Contract Clause analysis. *United States v. Belanger,* 598 F.Supp. 598, 604 n. 4 (D.Me.1984) (stating that the Contract Clause analysis in *Portland Sav. Bank* is no longer in force due to *Energy Reserves Group*).