2007 ME 47

**Charlotte HOLLENBERG**

v.

**TOWN OF UNION et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 20, 2006.
Decided: March 29, 2007.

Robert Marks., Washington, ME, for plaintiff.

Roger R. Therriault, Therriault & Therriault, Bath, ME, for Town of Union, defendant.

The other defendants did not file briefs.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.*

LEVY, J.

[¶ 1] Charlotte Hollenberg appeals from a judgment entered in the Superior Court (Knox County, *Wheeler, J.*) affirming the decision of the Town of Union Planning Board to grant a permit for a proposed

* Justice Howard H. Dana Jr. participated in the initial conference but retired before this opinion was certified.

development by Mr. Dodge's Neighborhood, LLC. Hollenberg contends, among numerous issues raised on appeal, that the Planning Board erred as a matter of law when it implicitly concluded that, because a water-filled quarry is not a "pond" as that term is used in the Town's Land Use Ordinance, the project need not comply with the Ordinance's seventy-five-foot pond setback requirement. Because we agree with this contention, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] Charlotte Hollenberg and Mr. Dodge's Neighborhood, LLC (LLC) each own property in the Town of Union, abutting opposite sides of a water-filled quarry. In 2004, the LLC submitted a proposal to the Town of Union Planning Board for a development of office and retail space, including a laundromat.

[¶ 3] Hollenberg raised numerous objections to the proposal at the hearing conducted by the Planning Board, including that the project would violate the Town's seventy-five-foot pond setback requirement: "No excavation, filling, or storage of materials shall occur within seventy-five (75) feet of the bank of any permanently flowing watercourse or of any pond or lake." Union, Me., Land Use Ordinance § 10.3.8.5 (June 19, 2000). The project as presented contained a fifty-foot setback from the closest point of the water-filled quarry to the closest building. The Planning Board's minutes reflect that there was also discussion as to whether a water-filled quarry triggered the Ordinance's pond setback requirement and whether the quarry had an inflow and outflow of water. The LLC provided the Planning Board with a Maine Department of Environmental Protection determination that the project did not require permits for alteration near the quarry because the quarry was not a wetland and did not have an inlet or outlet to any protected natural resource.

[¶ 4] The Planning Board unanimously approved the application. It made no specific findings on the pond setback issue. Hollenberg appealed the Planning Board's decision to the Town's Zoning Board of Appeals, which upheld the Planning Board's decision by a 4–2 vote. Hollenberg then appealed pursuant to M.R. Civ. P. 80B to the Superior Court, which affirmed the decision of the Board of Appeals. The court did not address the pond setback issue in its decision. Hollenberg filed this timely appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 5] When the Superior Court has performed an appellate review of an administrative decision, "we directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence." *York Ins. of Me., Inc. v. Superintendent of Ins.*, 2004 ME 45, ¶ 13, 845 A.2d 1155, 1159. We review interpretations of zoning ordinances de novo. *Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 10, 856 A.2d 1183, 1188. We interpret the Ordinance for its plain meaning and construe the Ordinance's terms in light of the purposes and objectives of the Ordinance and its general structure. *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27, 29.

### B. The Pond Setback Requirement

[¶ 6] We must determine whether a water-filled quarry constitutes a "pond" for purposes of the Town's Land Use Ordinance. The word "pond" is not defined in the Ordinance, nor does the Ordinance otherwise suggest any definitional criteria based on, for example, the size of the body

of water or its origin. The Ordinance does provide, however, that undefined "words and terms used in this Ordinance shall have their customary dictionary meanings." Union, Me., Land Use Ordinance § 13.0 (June 19, 2000).

[¶ 7] The dictionary definition of "pond" is "a body of water usu[ally] smaller than a lake and larger than a pool either naturally or artificially confined." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1762 (2002). State law also reflects that ponds include bodies of water that are created artificially. *See* 38 M.R.S. § 480–B(5) (2006) (including in the definition of "Great pond," inland bodies of water both "in a natural state" and "artificially formed").

[¶ 8] We conclude that a "pond" may include an artificially formed body of water. In its brief, the Town does not appear to dispute that a pond may be artificially formed. Rather, the Town draws a distinction between an artificially created body of water that is specifically created for the purpose of functioning as a pond, and an artificially created body of water that is the by-product of some other activity, such as the quarrying of granite. The problem with this logic is that once an artificially created hollowed-out area has become "a body of water ... smaller than a lake," the original purpose for its creation becomes irrelevant to determining whether it is presently functioning as a pond.[1] The distinction the Town asks us to draw is not possible from an ordinance that employs the word "pond" without any qualifications related to the circumstances leading to the pond's creation.

[¶ 9] In support of its position, the Town also relies on the Maine Department of Environmental Protection's determination that the quarry is not a wetland because it "does not have an inlet or outlet to any protected natural resource," and therefore, "does not require any permits for alteration directly adjacent to the quarry." This determination—that the quarry is a not a "wetland" for purposes of State law—is beside the point. The question before us is whether the quarry is a "pond" for purposes of the Town's Land Use Ordinance.

[¶ 10] The body of water at issue in this case is described as being approximately two acres in area, 280 feet deep, and containing wildlife inclusive of fish, frogs, and eels. It is not simply a quarry that occasionally carries incidental rainwater. It is, therefore, in the absence of limiting language in the Ordinance, "a body of water ... artificially confined," which is a pond.

[¶ 11] We conclude that the Planning Board erred when it determined that the project is not subject to the seventy-five-foot pond setback requirement of the Town's Land Use Ordinance. *See Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161, 164. Accordingly, we vacate the judgment and remand for further proceedings. We find no merit in and do not separately address Hollenberg's remaining contentions.

The entry is:

Judgment vacated. Remanded to the Superior Court for an order remanding to the Town of Union Planning Board for further proceedings consistent with this

---

1. State law distinguishes between quarries that are active and those that are no longer active and must be reclaimed. A "[q]uarry" is defined as "a place where rock is excavated." 38 M.R.S. § 490–W(17) (2006). Once *mineral extraction from a quarry* is completed, "[a]ll affected lands must be reclaimed within [two] years after final grading," *id.* § 490–Z(13)(D) (2006), and reclamation includes "the rehabilitation of the area of land affected by mining, including, but not limited to, ... the enhancement of wildlife and aquatic habitat and aquatic resources," *id.* § 490–W(18) (2006).

opinion. The judgment is affirmed in all other respects.