2. Contract provision. Any such adjustment services contract must contain a provision, prominently printed on the first page of the contract, stating that the person contracting with the adjuster has the option to rescind the contract within 2 business days after the contract is signed.
Id. § 1476(2). Plaintiff does not challenge the contract rescission provision.
[3] I make the observation concerning standing only because Defendant appears to contest the issue, albeit obliquely. Def.'s Mem. at 7 & n.4.
[4] The parties have stipulated that insurance adjusters have been known to take steps within the 36-hour window that compromise the ability of others to fully evaluate the extent of a loss.
[5] One of the greatest curiosities of the jurisprudence concerning commercial speech is that "commercial speech" is itself a pejorative term that conveys a measure of bias.
[6] "It is also true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Sorrell v. IMS Health Inc. , 564 U.S. 552, 567, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011).
[7] In Reed , the Supreme Court observed that "a content-based law that restricted the political speech of all corporations would not become content neutral just because it singled out corporations as a class of speakers." 135 S.Ct. at 2230 (citing Citizens United v. FEC , 558 U.S. 310, 340-41, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) ).
[8] Plaintiff says Defendant's showing on the interest issue is inadequate. Although the opinion expressed in Breard as to the constitutionality of absolute prohibition on cold-call solicitations has been discredited, the Breard Court took it as a given that the public, as a general rule, harbors an aversion to cold-call solicitation. 341 U.S. at 626-27 & n.3, 71 S.Ct. 920. See also Florida Bar v. Went For It, Inc. , 515 U.S. 618, 627-28, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (observing that the Bar mustered an "anecdotal record ... noteworthy for its breadth and detail," but also stating, "we do not read our case law to require that empirical data come to us accompanied by a surfeit of background information.... [and] are satisfied that the ban on direct-mail solicitation in the immediate aftermath of accidents ... targets a concrete, nonspeculative harm"). Plaintiff has not persuaded me that it would be improper for me to similarly credit Defendant's assertions about the desire of many property owners that the immediate aftermath of a fire loss not include cold-call solicitations.
[9] "The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically be 'officers of the courts.' " Goldfarb v. Virginia State Bar , 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).
[10] Defendant's argument that the Rule allows for so much communication is incompatible with Defendant's argument that the rule promotes a privacy interest. However, I do not credit Defendant's suggestions as to the amount of speech activity permitted by the Rule.
[11] I do not find any support in the record that there is a difference between the language used in the statute and what the legislature intended. Even if there was such evidence, I would not credit it in the least. To the extent that there is any difference between what the legislature intended, assuming that such a thing is ever knowable, and the plain language of the law it passed, that is a problem for the political branch to address. The Court is not equipped with the metaphysical ability to divine the potpourri of the legislators' individual and collective intent as to what they thought the bill might be during debate, committee markup and final passage. Even if armed with such an ability, it would be distinctly undemocratic to rely on the Court, fingers crossed, as the Oracle of Delphi to reveal what was intended by the law even if it flies in the face of what the law says.
[12] Other courts have similarly overturned state laws restricting solicitation activity by public adjusters. See Atwater v. Kortum , 95 So.3d 85, 87 (Fla. 2012) (concluding that a 48-hour ban on solicitation and any "contact" was excessive); Ins. Adjustment Bureau v. Ins. Comm'r for Commonwealth of Pa. , 518 Pa. 210, 542 A.2d 1317, 1323-24 (1988) (concluding that requirements of a bond, a form contract, a four-day rescission period, and a prohibition on misrepresentation were protection enough and invalidating a 24-hour ban on solicitation as an excessive prior restraint on speech).
[13] In fashioning a remedy, the Court can wield a carving knife rather than an axe. "Severability is a matter of state law," R.I. Med. Soc'y v. Whitehouse , 239 F.3d 104, 106 (1st Cir. 2001), and "Maine law mandates that the 'provisions of the statutes are severable,' " IMS Health Corp. v. Rowe , 532 F.Supp.2d 183, 186 (D. Me. 2008) (quoting 1 M.R.S.A. § 71(8) ). "An invalid portion of a statute or an ordinance will result in the entire statute or ordinance being void only when it is such an integral portion of the entire statute or ordinance that the enacting body would have only enacted the legislation as a whole." Kittery Retail Ventures, LLC v. Town of Kittery , 2004 ME 65, ¶ 18, 856 A.2d 1183, 1190. Here, the two prohibitions in the 36-Hour Rule are severable for purposes of remedy.
[14] The stipulated facts do not describe circumstances suggesting the need for injunctive relief at this time.
--------