STATE OF MAINE                                          SUPERIOR COURT

Cumberland, ss.


CSG PROPERTIES, LLC and
COPP EQUIPMENT, LLC

                     Plaintiffs

           v.                                Civil Action Docket No. CUMSC-AP-18-15

TOWN OF WINDHAM

                     Defendant

## DECISION AND PARTIAL JUDGMENT

In this case, Plaintiffs CSG Properties, LLC and Copp Equipment, LLC challenge the Defendant Town of Windham's enactment of a moratorium on the issuance of mineral extraction permits that has halted the processing of Copp Equipment's application for a permit to operate a rock quarry on property owned by CSG Properties.

The Plaintiffs' operative pleading is their four-count Second Amended Complaint: Count I--Rule 80B review of governmental action; Count II--declaratory judgment; Count III--an equitable estoppel claim, and Count IV—a constitutional claim for violation of due process and property rights. The Town opposes the Plaintiffs' cause of action on all four grounds.

However, based on an agreement of the parties, this Decision and Partial Judgment addresses only the claims in Counts II, III and IV of the Second Amended Complaint and defers ruling on the Rule 80B appeal in Count I. Oral argument on

1

REC'D CUMB CLERKS OFC
AUG 12 '19 PM2:00

the three counts at issue was held August 6, 2019, at which time the court took that aspect of the case under advisement.

Based on the entire record, and for the reasons set forth below, the court grants judgment to the Plaintiffs on Count II and to the Defendant on Counts III and IV of the Second Amended Complaint.

*Factual Background*

Plaintiffs Copp Equipment and CSG Properties are owned and operated by members of the Copp family in Windham. *See* Supplemental Affidavits For Record on Appeal—Affidavit of Randall Copp. ["Copp. Aff."] ¶¶ 1-3. As a result of various acquisitions and transfers, CSG Properties owns a large parcel in the Town of Windham, with areas suitable for operation as a rock quarry. *See id.* ¶¶ 4-5; Record on Appeal ["R."] at 1-3 (quitclaim deed). The property is located in what the Town's Land Use Ordinance defines as the Farm District. *See* R. 6.

In June 2017, the Town updated its Comprehensive Plan, and the updated Plan confirms the mineral extraction industry in the Town to be an important component of the Town's economy, along with farming and forestry. *See* R. 155.

At all relevant times, the Town's Land Use Ordinance has defined mineral extraction as a permitted use in the Farm District. *See* R. 6. The Ordinance has contained detailed performance standards for mineral extraction facilities. R. 46-52 (Town of Windham Land Use Ordinance Section 600 —Mineral Extraction).

Plaintiffs and their principals relied on the provisions of the Ordinance in effect prior to the Moratorium at issue in this case in acquiring the property and in spending

2

hundreds of thousands of dollars on property acquisition, purchase of equipment, geological and technical studies and research and other cost items, all in anticipation of obtaining a permit to operate a mineral extraction facility on the property. *See* Copp. Aff. ¶¶5, 36.

The property is located partly or entirely within the watersheds of Forest Lake and Highland Lake. *See* Supplemental Affidavits for Record on Appeal--Affidavit of Amanda Lessard [Lessard Aff.] ¶7; Affidavit of Donna Chapman ["Chapman Aff."] ¶5. Due to water quality issues resulting from extensive development activity, the Highland Lake and Forest Lake watersheds are listed in the Maine Department of Environmental Protection's list of "lake watersheds most at risk from new development." Lessard Aff. ¶7; Chapman Aff. ¶5.

In September 2017, due to concerns about the water quality impacts of new development projects and the resulting runoff into Highland Lake, the Windham Town Council adopted a moratorium on new permits for subdivisions and other major projects requiring site review located within the Highland Lake watershed. Lessard Aff. ¶4-5; Chapman Aff. ¶3.

In late February 2018, the Town Council voted to extend the moratorium as an emergency ordinance. *See* R. 131 (April 3, 2018 Town Council meeting minutes). Under Section 11(D) of the Town Charter, the Town Council may enact emergency ordinances without going through the notice and hearing process ordinarily required, but any emergency ordinance expires on the 61st day after enactment unless it is

3

extended based on the continuation of the emergency. R. 188-19 (Town of Windham Charter, Section 11(D)).

Neither the original moratorium nor the extended moratorium applied specifically to mineral extraction projects such as that proposed by Plaintiffs. It did apply to "large-scale earth moving, subdivisions, and any projects requiring site plan review." Lessard Aff. ¶6.

In December 2017, representatives of the Plaintiffs met with the Town Planner and Code Enforcement Officer about Plaintiffs' plan to apply for a mineral extraction permit for their property. Copp. Aff. ¶7. The Town officials explained the review process under section 800 of the Town's Land Use Ordinance. *See* R. 53-108 (Town of Windham Land Use Ordinance Section 800—Site Plan Review).

At the time of the December 2017 meeting, the Town of Windham Land Use Ordinance ["Ordinance"] prescribed the following process for review of major development projects. *See* R. 61-65 (Ordinance Section 807 – Review Procedures for Major Developments):

- The applicant is to schedule a "pre-application conference" with Town planning staff so that Town staff can obtain a general understanding of the proposed project and also so that staff can explain the permitting process to the applicant.

- The applicant is to submit an application for a mineral extraction permit to the Town planner. *See* Copp. Aff. ¶7. If the Town Planner determines the application appears to be complete, there is a meeting with Town planning staff. *See id.*

4

- The next step is for the applicant to submit what the Ordinance calls a "sketch plan" for the Town Planning Board to review. The Ordinance's submission requirements define a "sketch plan" to include a narrative that describes the property and the proposed project; any traffic or other studies that are anticipated; evidence of right, title and interest; the names of the applicant and consultants and a detailed scale plan. *See* R. 70 (Ordinance Section 811(A)—Sketch Plan Submission Requirements).

- Once the Sketch Plan is submitted, notice of the Planning Board meeting at which the Planning Board will review the Sketch Plan is given to the applicant and to property abutters and also is published in the newspaper. *See* R. 62 (Ordinance Section 807(D)—Sketch Plan Review Procedures). The Ordinance gives the Planning Board the option to schedule a site walk at the time of Sketch Plan review. *See id.*

- The Ordinance provides that "[t]he Planning Board shall review the Sketch Plan with the applicant and shall authorize the submission of the Final Plan application when the Sketch Plan review is complete." R. 62 (Ordinance Section 807(C)(2)—Sketch Plan). The Ordinance also says that the Board's "review of the Sketch Plan shall be informational and shall not result in any formal approval or disapproval of the project by the Planning Board." R. 62 (Ordinance Section 807(E)—Review of the Sketch Plan). It says that "[t]he outcome of the [Sketch Plan] review process shall be the identification by the Board of the

5

issues and constraints that shall be addressed in the Final Site Plan review application." R. 63 (Ordinance Section 807(E)(5)).

- Before an applicant may submit a Final Site Plan review application, the applicant must submit any required permit approvals from various federal, state or local agencies such as the U.S. Army Corps of Engineers, the Maine Department of Environmental Protection and the Portland Water District. *See* R. 63-64 (Ordinance Section 807(F)(1)—Final Site Plan Review Procedures).

- The Final Site Plan review application is first submitted to the Town Planner, who reviews the application to determine if it is complete. *See* R. 64 (Ordinance Section 807(F)(4)).

- Once the Town Planner has deemed the application complete, it goes to the Planning Board, which may decide to hold a public hearing on the final application. *See* R. 65 (Ordinance Section 807(F)(8). *See id.* Section 807(G)—Final Site Plan, Public Hearing Procedures).

- After a public hearing, if any is convened, the Planning Board votes on the application. *See* R. 65 (Ordinance Section 807(H)—Final Site Plan, Vote on Application).

Plaintiffs' December 2017 meeting with the Town Planner and Code Enforcement Officer appears to have constituted the pre-application meeting that is the first step in the application process.

6

On March 5, 2018, Plaintiff Copp Equipment submitted an application for a mineral extraction permit, along with payment of the $600 fee. Copp. Aff. ¶9; *see* R. 7-35 ("Sketch Plan Application, Proposed Copp Mineral Extraction"). On March 14, Copp Equipment and its consultant met with Town staff to discuss the application. Copp. Aff. ¶9. The Town staff raised questions about the project's access road and other matters and did not raise any major issues or concerns about the project. *Id.*

Within a few days of the meeting, the Town Planner reviewed the application and prepared a memorandum to the Town Planning Board, summarizing her review. *See* R. 40-45 (March 21, 2018 Memorandum to Windham Planning Board from Amanda Lessard, Town Planner). Among other things, the memorandum indicated that the application was ready to be presented to the Town Planning Board. *See id.* However, the staff memorandum noted that the applicant was requesting a waiver of the ordinance requirement that a stormwater management plan be submitted, R. 42: "The applicant needs to address how the waiver does not result in flooding or adverse drainage impacts on abutting properties." R. 41.

The application came before the Windham Planning Board at its March 26, 2018 meeting. *See* R. 117-22 (March 26, 2018 Planning Board meeting minutes). The Planning Board was provided with the Sketch Plan and other documents relating to the rock quarry proposal. R. 118. The Town Planner identified what she saw as the major questions for the Board going forward, and she and Randall Copp answered questions from the Board members. R. 118-19. At that meeting, the Planning Board voted to conduct a site walk and to open the discussion to public comment. R. 119.

7

Members of the public commented, mostly to raise questions and concerns about the proposal. *See* R. 119-22. After public comment, the Planning Board voted to hold a public hearing. R. 122.

The moratorium extension adopted by the Windham Town Council was set to expire in late April 2018, so the topic appeared as a discussion item at the Town Council's April 3, 2018 meeting. *See* R. 131-32 (April 3, 2018 Town Council meeting minutes); Supplemental Record [Supp. R.] at 13-14 (same). At the meeting, the Town Manager advised the Council that the Council needed to hold a public hearing and vote on any further extension by its April 24, 2018 meeting or the moratorium would expire. *See id.* Council Chair Chapman raised the question whether the moratorium should be expanded to cover proposed rock quarries within the Highland Lake watershed. *See id.*

Meanwhile, on April 3, 2018, the Maine Department of Environmental Protection issued a permit for the Plaintiffs' rock quarry. R. 129. On the same day, the Town planner forwarded information to the Town manager indicating that the Plaintiffs' proposed rock quarry was not located above a mapped aquifer beside Forest Lake. R. 130.

The Town Council held another meeting April 17, 2018, but no action was taken regarding enacting a moratorium on mineral extraction permits. The Town Manager circulated a draft of a moratorium on mineral extraction permits via email to Town councilors on April 20, 2018. R. 140.

8

At its April 24, 2018 meeting, the Town Council voted to adopt an emergency "Moratorium Ordinance on Mineral Extraction." *See* R. 141-43 [hereinafter "Moratorium"]. The Moratorium recited the environmental impacts associated with mineral extraction operations as justifying a 180-day moratorium on any new mineral extraction permits. It indicated that it was intended to apply, to the extent permitted by law, to "all proceedings, applications and petitions not pending within the meaning of 1 M.R.S.A. § 302 as of April 17, 2018. . . ." R. 142.

In a May 2, 2018 letter to the Town planning staff, Plaintiffs' counsel contended that the Plaintiffs' application was "pending" for purposes of 1 M.R.S. § 302, and requested that the Planning Board proceed with the site walk and move the application forward in the process. R. 144-45.

In a May 7, 2018 response, the Town's counsel indicated that the Town's view was that Plaintiffs' application was not "pending" for purposes of 1 M.R.S. § 302, and therefore that the Moratorium applied to Plaintiffs' application.

Because the Moratorium was adopted as an emergency ordinance, it came up again as an agenda item for a public hearing and vote at the Town Council's May 22, 2018 meeting. Plaintiffs' counsel appeared at the hearing and advised that the Plaintiffs were commencing this action and explained Plaintiffs' position that their permit application should not be delayed or denied as a result of the Moratorium. R. 154-56. After further public comment, the Council voted 5-1, with one absent, to approve the Moratorium as a regular, non-emergency ordinance. The Moratorium e adopted May 22, 2018 substantively incorporated *verbatim* the April 24, 2018 version,

9

meaning that it covered applications "not pending for purposes of 1 M.R.S.A. § 302 as of April 17, 2018 . . ."

Later in May, the Town convened a special combined meeting of the Town Council, the Town Planning Board and the Town Board of Appeals, to address questions about the Moratorium and how it affected the boards' ability to act on applications. The Town's attorney explained that under the current version of the moratorium, the provisions of 1 M.R.S. § 302 precluded the moratorium from applying to any application that had received substantive review by the Planning Board or Board of Appeals. *See* R. 170-72; DVD of Special Meeting.

In June 2018, the Town's attorneys sent a memorandum to the Town Council taking note of the Council's intent to have the Moratorium apply to the Copp Equipment application, and recommending that the Moratorium be amended to define what applications would and would not be deemed "pending" as of the April 17, 2018 date for purposes of 1 M.R.S. § 302. *See* R. 176-77.

Accordingly, at its June 19, 2018 meeting, the Town Council voted to approve an emergency amendment to the paragraph of the Moratorium.. In pertinent part, the amended paragraph reads as follows, with the new language *italicized* :

> BE IT FURTHER ORDAINED, that, in view of the facts cited herein, this Moratorium Ordinance shall take effect immediately and, notwithstanding the provisions of 1 M.R.S. § 302, shall be applicable, to the maximum extent permitted by law and subject to the severability clause above, to all proceedings, applications and petitions not pending as of April 17, 2018, the date upon which this Moratorium Ordinance was first discussed by Town Council. *For purposes of this Moratorium Ordinance, an application shall not be considered "pending" until a final application has been deemed complete by the reviewing authority. Consideration*

*during a pre-application meeting, staff review process or sketch-plan review shall not qualify an application as "pending."* This moratorium ordinance shall remain in effect for 180 days from the date of enactment, unless sooner repealed or extended by the Town Council.

R. 179-81 (emphasis added).[1]

Because the amendment was an emergency amendment, it needed to come before the Council on a non-emergency basis. That occurred at the Council's June 26, 2018 meeting. *See* Supp. R. 17 (June 26, 2018 Town Council meeting agenda).

Between the June 19 and June 26 Council meetings, Randall Copp made inquiry of the Town code enforcement officer about possibly using CSG's property for purposes other than a rock quarry, specifically a single-family residence on a portion of the property. *See* Copp. Aff. ¶¶ 19-29. A private road almost a mile long would likely be required, with well over 1,000 cubic yards of earth or other material needing to be removed to complete the road. *See id.*

When the emergency amendment to the Moratorium came back to the Council at its June 26, 2018 meeting, it was accompanied by a further amendment that would extend the moratorium to any project involving the removal of more than 500 cubic yards of material. *See id.; see also* Supp. R. 24-26. The minutes of the June 26, 2018 meeting indicate that the code enforcement officer explained that the amendment was "to address a situation", Supp. R. 25 (June 26, 2018 Town Council meeting minutes)— a comment the Plaintiffs say clearly shows that the additional amendment was

---

[1] The copy in the Record, R. 179-81 is titled "Moratorium Ordinance on Mineral Extraction (*Proposed* Amendment June 19, 2018)" (emphasis added), but this Decision assumes that it reflects what was actually adopted June 19, 2018.

11

proposed in response to Mr. Copp's inquiry and that shows also the Town was trying to prevent any use of their property.

However, the Town Council did not adopt the additional amendment at its June 26, 2018 meeting. Instead, it voted to amend the Moratorium in the same form as the previously approved emergency amendment. *See id.*

As of 2018, the Town's ordinance on mineral extraction standards had not been amended for eight years. Lessard Aff. ¶ 10. "During that time, Windham experienced very significant residential growth in areas that were currently permitted for mineral extraction operations. Such operations are known to produce nuisance effects such as dust, noise and vibration." *Id.* Accordingly, the Town Planner "agreed with members of the Council and general public that it made sense to pause approvals for mineral extraction activities so that a committee could consider whether new zoning requirements were necessary to protect water quality and to protect against nuisance conditions." Lessard Aff. ¶ 11.

In June 2018, the Town Council appointed a Mineral Extraction Committee to review current zoning maps and regulations regarding mineral extraction operations and make recommendations on where such operations should be allowed and under what conditions and standards. *See* R. 210-11, 213-14.

In October 2018, the Town Council voted to extend the Moratorium to enable the Committee to complete its work and submit a report and recommendations to the Planning Board and Town Council. Lessard Aff. ¶ 18.

According to the Town's brief, "[t]he Mineral Extraction Committee completed its review process over the winter of 2019 and its recommendations were submitted to the Planning Board for review and comment. On April 9, 2019, the Council approved changes to the Mineral Extraction Ordinance pursuant to the recommendations of the Mineral Extraction Committee, and repealed the existing Moratorium." Defendant's Brief at 7.

The Supplemental Record filed in this case contains the new version of the Mineral Extraction section of the Town's Land Use Ordinance. *See* Supp. R. 40-51. The Town's Brief proposes that Copp Equipment proceed with its application under the new version of the Mineral Extraction Ordinance. *Id.* at 10.

Plaintiffs' Brief says that the new version of the Mineral Extraction Ordinance "makes significant changes to the performance standards but includes one provision that appears to be crafted to prevent Plaintiffs from ever building a quarry on their 151 acres." Plaintiffs' Brief at 11. That provision says no private access road to a mineral extraction operation may connect directly with a public road that serves more than 100 residences. Plaintiffs say their proposed quarry's access road would not meet that standard because it connects directly with Blackstrap Road, which has well over 100 residences along its length. *See id.*

Plaintiffs contend that the Town should be required to consider Copp Equipment's application under the version of the Mineral Extraction Ordinance in effect prior to April 18, 2018.

*Procedural Background*

The original Complaint was filed May 22, 2018, in two counts—for review of governmental action and for declaratory judgment. A First Amended Complaint was filed three days later, setting forth the same claims. The court issued a notice and briefing schedule May 30, 2018. Meanwhile, as noted above, during the month of June, the Town continued to address the underlying issues and ultimately decided to amend the moratorium.

On June 25, 2018, the Town filed a Motion to Dismiss to which the Plaintiffs responded by objecting and filing a motion for leave to again amend their complaint to take account of the Town's actions during June 2018. The court denied the Town's Motion to Dismiss and granted Plaintiffs' motion for leave to file their Second Amended Complaint, which is their operative pleading.

Meanwhile, due to the ongoing events and the complexity of the record, the court granted the Plaintiffs four extensions of their deadline to file the record, in orders dated June 25, August 20, September 4 and September 26, 2018.

Plaintiffs filed the initial record and their brief in December 2018 and the Town's brief was filed in January 2019. In January 2019, a dispute arose about the status of the Plaintiffs' claims in Counts II-IV of their Second Amended Complaint. The Town filed a motion to dismiss those counts because Plaintiffs had not filed a Rule 80B(i) motion to specify future course of proceedings. Plaintiffs responded by saying they were not seeking any evidentiary hearing on the Count II-IV claims so there was no need for such a motion.

14

In a conference of counsel February 20, 2019, as reflected in the order of that date, the dispute was resolved through an agreement that the court could consider all of the Plaintiffs' contentions in Counts III and IV regarding equitable estoppel and violation of due process in the context of Rule 80B review, and could also award declaratory relief for purposes of Count II of the Second Amended Complaint.

It was also agreed that the record should be supplemented and the parties' briefing updated to reflect the Town's activity in developing a new mineral extraction ordinance during the latter part of 2018 and early 2019. The supplemental record was filed April 1, 2019, along with the Plaintiffs' amended brief. The Town's amended brief was filed later in April 2019 and the Plaintiffs' reply was filed at the beginning of May 2019.

Oral argument was scheduled for May 23, 2019. At the oral argument, the Town again noted its position that there has been no appealable decision for purposes of the Rule 80B claim.

The court asked the attorneys to confer on a possible means of resolving the issue so as to avoid piecemeal litigation. The Plaintiffs proposed a remand for the Planning Board to make an appealable decision and the Town opposed that. The Town filed a renewed Motion to Dismiss the Rule 80B claim in Count I. After a further conference of counsel, the parties and the court agreed for the case to proceed on Counts II, III and IV of the Second Amended Complaint and for ruling on the Rule 80B claim in Count I to be deferred. In an order dated June 20, 2019, the court set forth the parties' agreement and indicated, "After the Court's ruling on [Counts II, III

15

and IV], the parties and the Court can determine whether, and if so, how the Rule 80B appeal in Count I of the Second Amended Complaint should proceed."

As noted above, oral argument on the three counts at issue was held August 6, 2019.

## *Analysis*

This analysis first addresses the Town's arguments about lack of jurisdiction and mootness, given that jurisdiction and the existence of a justiciable controversy are prerequisites to the court's analysis of the merits.

Based on the action not being moot, this analysis then focuses on the amended moratorium to determine whether it should be construed to apply to the Copp Equipment application, addressing first the Plaintiffs' contention that the application was pending for purposes of 1 M.R.S. § 302, and then their claims based on vested rights, equitable estoppel and wrongful delay and discrimination.

### 1. *Jurisdiction and Mootness*

The Town contends that the court lacks jurisdiction to review the validity of the Moratorium Ordinance on Mineral Extraction. *See* Defendant's Brief at 7-9. The Town says that because municipalities are granted statutory authority to enact moratoria, *see* 30-A M.R.S. § 4356,[2] the court lacks authority to review the "legislative

---

[2]  Title 30-A, section 4356, Maine Revised Statutes, reads as follows:

Any moratorium adopted by a municipality on the processing or issuance of development permits or licenses must meet the following requirements.

1. Necessity.  The moratorium must be needed:

motivations" underlying the Moratorium on Mineral Extraction. Defendant's Brief at 9.

Judicial review of a town's enactment of a moratorium is limited and deferential, as discussed further below, but the court has jurisdiction to conduct such review. Generally, a municipality's legislative acts (as opposed to permitting decisions and other administrative acts) may be subjected to judicial review in a declaratory judgment action. *See F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 859 (Me. 1992) ("Judicial review of a zoning ordinance amendment may be obtained by an action seeking a declaratory judgment."), *citing LaBonta v. City of Waterville*, 528 A.2d 1262, 1263 (Me. 1987).

A party adversely affected by a municipal moratorium on the issuance of permits may challenge the validity of the moratorium on the ground that it fails to meet the statutory criteria for enactment of moratoria, including the requirement that the moratorium must be needed. *See Minster v. Town of Gray*, 584 A.2d 646, 649 (Me.

---

A. To prevent a shortage or an overburden of public facilities that would otherwise occur during the effective period of the moratorium or that is reasonably foreseeable as a result of any proposed or anticipated development; or

B. Because the application of existing comprehensive plans, land use ordinances or regulations or other applicable laws, if any, is inadequate to prevent serious public harm from residential, commercial or industrial development in the affected geographic area.

2. Definite term. The moratorium must be of a definite term of not more than 180 days. The moratorium may be extended for additional 180-day periods if the municipality adopting the moratorium finds that:

A. The problem giving rise to the need for the moratorium still exists; and

B. Reasonable progress is being made to alleviate the problem giving rise to the need for the moratorium.

3. Extension by selectmen. In municipalities where the municipal legislative body is the town meeting, the selectmen may extend the moratorium in compliance with subsection 2 after notice and hearing.

1990) (challenge to municipal moratorium on mobile home park permits based on lack of necessity brought under Rule 80B and Declaratory Judgments Act).

Plaintiffs in this case challenge the necessity for the mineral extraction Moratorium and are entitled to do so through an action for declaratory judgment. *See Annable v. Board of Environmental Protection*, 507 A.2d 592, 595 (Me. 1986).

The Town also says that the case is moot because Copp Equipment's application can proceed under the new version of the Mineral Extraction Ordinance, and also because the Moratorium has already expired and cannot be retroactively invalidated.

But this case is not moot. The issue as it stands now is whether Copp Equipment is entitled to have its application processed under the prior version of the Mineral Extraction Ordinance as Plaintiffs claim, or whether the application is subject to the current version, as the Town claims. The fact that the Moratorium has expired does not render moot that issue, which still presents a justiciable controversy for purposes of declaratory relief. "A justiciable controversy involves a claim of present and fixed rights based upon an existing state of facts. Accordingly, rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future.'" *Madore v. Maine Land Use Regulation Comm'n*, 1998 ME 178, ¶ 7, 715 A.2d 157 (quoting *Campaign for Sensible Transp. v. Maine Turnpike Auth.*, 658 A.2d 213, 215 (Me. 1995)) (internal quotations omitted).

Plaintiffs' declaratory judgment claim meets these criteria—there is nothing contingent or hypothetical about their demand for their application to be processed and decided based on the pre-Moratorium version of the ordinance, which it would

18

have to be if the Moratorium, as amended and extended, is not a valid legislative act. Thus, Plaintiffs' Second Amended Complaint raises a justiciable controversy over which the court has jurisdiction.

Moreover, there is no doubt that the Plaintiffs have standing to challenge the validity of the Moratorium, because the Moratorium adversely and substantially affects them (and, as far as the record indicates, only them). Certainly it affects them more concretely and differently than it does the general population.

2. *Applicability of 1 M.R.S. § 302 to Plaintiffs' Permit Application*

Plaintiffs contend that Copp Equipment's application should be deemed "pending" for purposes of 1 M.R.S. § 302 and therefore unaffected by the Moratorium or the newly enacted version of the Mineral Extraction Ordinance. Section 302 provides in pertinent part, "Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."

Plaintiffs point to Law Court precedent that, on its face, supports their contention that section 302 entitles them to have their application considered under the pre-Moratorium version of the ordinance. *See Maine Isle Corp. v. Town of St. George,* 499 A.2d 149, 151-52 (Me. 1985); *Littlefield v. Inhabitants of Town of Lyman,* 447 A.2d 1231, 1233 (Me. 1982).

However, in *City of Portland v. Fishermans Wharf Associates II,* the Law Court concluded that section 302 is a rule of statutory construction, not a substantive rule of law, and that municipalities have the authority to enact ordinances that apply retroactively to pending applications:

19

We therefore conclude that since section 302 does not distinguish between statutes and ordinances, it should be applied to retroactivity clauses in municipal ordinances in the same manner that it is applicable to like clauses in the Legislature's enactment of statutes -- namely that if either a statute or an ordinance contains a provision of retroactivity, section 302's rule of prospectivity is negated.

541 A.2d 160, 164 (Me. 1988).

In *Kittery Retail Ventures, LLC v. Town of Kittery*, the Law Court confirmed that "section 302 is a rule of statutory construction and does not apply when there is clear and unequivocal language that the statute or ordinance applies to pending proceedings." 2004 ME 65, ¶20, 856 A.2d 1183, *cert. den.*, 544 U.S. 506 (2005).

Here, instead of purporting to apply the moratorium to pending applications, the amendment to the Moratorium defines the term "pending" for purposes of retroactivity, so as to exclude from the definition of "pending" all mineral extraction permit applications that had not gone beyond the sketch-plan review stage as of the effective date. The definition excludes Plaintiffs' application from "pending" applications.

Section 302 has its own definition of "pending"---"[A]n application for a license or permit required by law at the time of its filing shall be considered to be a pending proceeding when the reviewing authority has conducted at least one substantive review of the application and not before. For the purposes of this section, a substantive review of an application for a license or permit required by law at the time of application shall consist of a review of that application to determine whether it

20

complies with the review criteria and other applicable requirements of law." 1 M.R.S. § 302.

Were 1 M.R.S. § 302 a rule of law, the Town's Moratorium amendment clearly could not override the statutory definition of "pending." But it is not a rule of law. Because a municipal ordinance can simply override and negate section 302 if it so provides clearly and unequivocally, no reason appears why a municipality cannot enact a moratorium ordinance that defines what applications shall be deemed "pending" for purposes of retroactivity differently from section 302.

The amended Moratorium clearly and unequivocally extends to and affects mineral extraction permit applications that have been submitted and reviewed up the sketch-plan review stage. Therefore, even assuming the Copp Equipment application had undergone substantive review and was therefore "pending" within the meaning of 1 M.R.S. § 302, as the Plaintiffs contend, the amended Moratorium clearly and unequivocally defines "pending" differently from section 302 and in a form that applies to the Copp Equipment application.

This means that the precedent Plaintiffs rely on for their section 302 argument—such as the *Littlefield* and *Maine Isle* decisions of the Law Court—simply does not apply. Those decisions did not involve ordinance amendments (or moratoria) crafted to apply to applications that would be deemed pending under the section 302 definition of the term. Because the Town could, and in fact did, enact an amended moratorium that does specifically covers applications would be within the section 302

21

definition of "pendng," whether the Plaintiffs' application was or was not pending for purposes of section 302 is not relevant.

This conclusion does not end the analysis. The Plaintiffs challenge the validity of the Moratorium because it was unnecessary and not justified by any emergency. They say that they have acquired "vested rights," that the Town has acted in a discriminatory manner, and that the Town is equitably estopped from refusing to process their application under the pre-Moratorium version of the Mineral Extraction Ordinance.

### 3. *Plaintiffs' Challenge to the Necessity for the Moratorium*

Plaintiffs contend that the Moratorium is *ultra vires* and unconstitutional for substantive due process purposes because it was not enacted in compliance with the moratorium authorization statute, which requires that a municipal moratorium be based on necessity. 30-A M.R.S. § 4356. *See* Plaintiffs' Reply Brief at 1-2.

As noted above, the Plaintiffs do have standing to challenge the validity of the moratorium because they are directly and adversely affected by it, but their burden on their challenge is extremely high. The party challenging the enactment of a moratorium has "the burden to establish the complete absence of any state of facts that would support the need for the enactment." *Minster v. Town of Gray*, 584 A.2d at 949, *quoting Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me. 1985) (internal quotations omitted).

In this case, the Town's documented concern for watersheds and water quality goes back to well before the Plaintiffs had even met with Town staff about their

22

potential application. The Town's concern was based in part on the potential for major projects involving the removal or relocation of substantial quantities of earth or other material to contribute to runoff and eventually to non-point source pollution of lake waters. The Maine Department of Environmental Protection's classification of the Highland Lake and Forest Lake watersheds as impaired supports the Town's concern.

The Town had already enacted in September 2017 a moratorium on permits for subdivisions and other major projects in the Highland Lake watershed. Mineral extraction operations by definition entail the removal and/or relocation of substantial quantities of earth and other material, but were not specifically included in the original moratorium.

The Town's mineral extraction ordinance had stood unchanged for eight years, during a time of significant residential development. The Town Council could reasonably have decided that the mineral extraction ordinance ought to be reviewed and, as necessary, revised before further permits were issued.

The Moratorium on Mineral Extraction recites most of these background facts, and also the fact that the Town's Mineral Extraction Ordinance had not been updated since 2010, well before much of the recent developments within the watersheds.

The Maine moratorium statute defines "necessity" in two ways, one of which is "the application of existing comprehensive plans, land use ordinances or regulations or other applicable laws, if any, is inadequate to prevent serious public harm from

23

residential, commercial or industrial development in the affected geographic area." 30-A M.R.S. § 4356(1)(B).

Based on the entire record, the Town Council could reasonably have determined that the application of the existing mineral extraction ordinance would be inadequate to prevent potential significant impacts from Plaintiff's proposed rock quarry, within the meaning of section 4356(1)(B). Accordingly, Plaintiffs have not established that there is no state of facts that supports the necessity for the Moratorium, as amended.

Moreover, the record demonstrates a justification for the extension voted in October 2018. Section 4356 permits extensions as needed, provided the necessity for a moratorium continues and progress is being made toward addressing the cause of the necessity. The Mineral Extraction Committee was meeting through the summer and early fall, and then sent its recommendations to the Council, which referred them to the Planning Board.

For these reasons, the Town's Moratorium, as enacted, amended and extended, was a valid exercise of the Town's police power for purposes of substantive due process and also complied with the requirements of 30-A M.R.S. § 4356.

4. *Plaintiffs' Equitable Estoppel Claim*

Plaintiffs say that the Town should be equitably estopped from refusing to process Copp Equipment's application under the pre-Moratorium Mineral Extraction Ordinance because the Town led the Plaintiffs to believe that their proposal was lawful and the Plaintiffs acted in reliance through their substantial investment of time and resources in acquiring property and preparing the application.

24

In this context, equitable estoppel is typically invoked defensively, to prevent a municipality from revoking a permit or pursuing enforcement action, so it cannot be a theory of liability or a cause of action. *See Waterville Homes, Inc. v. Maine Department of Transportation,* 589 A.2d 455, 457 (Me. 1991) (equitable estoppel is an affirmative defense that can be used as a shield but not as a sword). On that ground alone, Plaintiffs cannot prevail on their equitable estoppel claim.

However, even on its merits, their equitable estoppel claim lacks support in the record. To prevail on their equitable estoppel claim, the Plaintiffs must show misrepresentation by the Town or a person acting on behalf of the Town such as a member of the planning staff or a board member, and that the Plaintiffs acted to their detriment based on the misrepresentation. *See Waterville Homes, Inc. v. Maine Department of Transportation,* 589 A.2d at 457; *City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 715 (Me. 1990).

Here, there is nothing in the record indicating that either the Town or anyone acting on behalf of the Town made any material misrepresentation to the Plaintiffs that induced detrimental reliance on the Plaintiffs' part.

Undoubtedly the Plaintiffs relied on the pre-Moratorium provisions of the Town's Land Use Ordinance, including the Section 600—Mineral Extraction— portions, in deciding to apply. However, an applicant's reliance on the existing provisions of an ordinance is not enough—otherwise every applicant for a land use permit would have an equitable estoppel claim.

25

The reliance that Plaintiffs assert was certainly substantial in terms of acquiring property and doing the studies and research needed to apply, but most of the acts in reliance upon the pre-Moratorium ordinance appear to have occurred before the Plaintiffs first approached the Town about the project in December 2017. The record does not show that the Town made any representation that induced the Plaintiffs to take the steps they did.

Moreover, the fact that Town, through the Planning Board and its staff, processed the application to the sketch-plan review stage does not establish an equitable estoppel claim. Just as an applicant's reliance on the existing ordinance provisions does not equitably estop a municipality from changing the ordinance, neither does the municipality's acceptance and processing of an application.

For these reasons, the court concludes that the record does not support Plaintiffs' equitable estoppel claim, even assuming equitable estoppel can be invoked in this context.

### 5. *Plaintiffs' Vested Rights Claim*

Plaintiffs assert that they have acquired the vested right to compel the Town to consider the Copp Equipment application under the pre-Moratorium version of the Land Use Ordinance.

It is clear that a showing of vested rights requires more than a showing of substantial expenditure and investment in connection with the application. In *Kittery Retail Ventures*, the Law Court summarized the vested rights doctrine in Maine as follows:

26

> Generally, neither the submission of a development application, nor the issuance of a development permit, establishes vested rights. This is because all property is held in subordination to the police power. Although a party may acquire vested rights as a result of equitable considerations, mere reliance on the language of an existing ordinance, or the incurrence of preliminary expenses to satisfy application requirements, is not sufficient to establish vested rights.

2004 ME 65 ¶ 20, 856 A.2d 1183.

Maine law is clear that an applicant's action in reliance can confer a vested right in a permit, but it is also clear that there cannot be any vested right to obtain a permit that has yet to be issued.

The Law Court's vested rights jurisprudence has evolved over time. In 1978, the court said, "An applicant for a building permit may acquire vested rights to such a permit by virtue of a substantial good faith change made in reliance on the zoning law in effect at the time of the application, or on the probability of the issuance of a permit approval." 381 A.2d at 647 (Me. 1978).

However, in its 1998 decision in *Peterson v. Town of Rangeley*, after quoting the foregoing sentence from *Thomas*, the court said, "The circumstances when rights vest, however, occur when a municipality applies a new ordinance to an existing permit." 1998 ME 192, ¶ 12 n.3, 715 A.2d 930. Thus, the "probability of the issuance of a permit approval" cannot establish a vested right to such approval.

The *Kittery Retail Ventures* case decided six years after *Peterson* confirms that neither an applicant's reliance on the current zoning ordinance nor the probability that

27

a permit will be issued based on the current ordinance is sufficient to establish vested rights. *See Kittery Retail Ventures*, 2004 ME 65 ¶ 20, 856 A.2d 1183.

This means that, even if the applicant has acted in reliance in anticipation of obtaining a permit, no vested right to be protected against a change in law can accrue unless and until a permit has actually been issued. Moreover, even if a permit has already issued, a vested right thereunder may not yet have accrued if the applicant has not taken substantial action in reliance on the issued permit:

> Such rights may not vest, for instance, solely because a property owner: (1) filed an application for a building permit; (2) was issued a building permit; (3) relied on the language of the existing ordinance; or (4) incurred preliminary expenses in preparing and submitting the application for a permit.

*Sahl v. Town of York*, 2000 ME 180, ¶ 13, 760 A.2d 266.

Because Copp Equipment was never issued a permit for the rock quarry, its actions in reliance on the opportunity to obtain a permit—substantial though those actions plainly were—did not establish any vested right to a permit.

*6. Plaintiffs' Claims of Wrongful Delay, Bad Faith and Discriminatory Treatment:*

Plaintiffs' claims of bad faith, wrongful delay and discriminatory treatment are considered here together because they overlap in many respects.

If the Moratorium failed to comply with the moratorium statute, 30-A M.R.S. § 4356, the Plaintiffs would have a strong argument that the Town wrongfully delayed action on Copp Equipment's application. But for the reasons discussed above, the Plaintiffs have not shown that the Moratorium violates the statute.

28

There also is no indication that the Town planning staff or the Planning Board delayed the processing of Copp Equipment's application through the Town's permitting procedure in a manner indicative of bad faith or deliberate obstruction. The Town planner completed her review of the application expeditiously and the application came before the Planning Board for sketch-plan review within three weeks of when it was filed. The Planning Board's planned site walk was put on hold in early to mid-April 2018, but only because it was apparent that the Town Council was going to consider a moratorium on mineral extraction permits that would make the site walk irrelevant for the time being.

Also, the fact that the Town had already imposed a moratorium on some forms of development in the lake watersheds before the Plaintiffs brought their plans to the Town at the December 2017 meeting undermines, so to speak, the Plaintiffs' contention that the Town's enactment of the Moratorium on Mineral Extraction was in bad faith. As noted above, the Town could reasonably have viewed rock quarries and other mineral extraction activity in the Forest Lake watershed as having a potential impact on the lake watersheds similar to the impact of the subdivisions and other development in the Highland Lake watershed that the Town had made subject to the September 2017 moratorium.

Plaintiffs' discrimination claim asserts that their project was "targeted" by the Moratorium. *See* Plaintiffs' Brief at 24. Several underlying facts and circumstances do give some credence to Plaintiffs' discrimination claim.

29

Copp Equipment's application was apparently the only mineral extraction permit application before the Town Planning Board when the Moratorium was enacted, and also the fact that Copp Equipment's application plainly triggered the enactment of the Moratorium. The fact that Copp Equipment's application was the only application for a mineral extraction permit before the Planning Board at the time does not, in and of itself, establish discrimination or bad faith. The amended Moratorium was worded to apply to any such application; had other applications been pending at the same early stage of the process, the amended Moratorium would have applied to them.

Another underlying fact that Plaintiffs cite in support of their discrimination claim is the undisputed fact that Copp Equipment's application was the impetus for enactment of the Moratorium. However, this does not prove either discrimination or bad faith. A municipality may enact a moratorium in direct response to a specific permit application provided there is a need for the moratorium. *See Waste Disposal, Inc. v. Town of Porter*, 563 A.2d 779, 780 n.2 (Me. 1989) (defendant town's moratorium enacted in "direct response" to plaintiff's application for waste disposal site). In this case, the enactment of the Moratorium enabled the Town to defer action on the Plaintiffs' application while the Town reviewed and, as appropriate, amended its mineral extraction ordinance.

Yet another fact Plaintiffs point to is the last-minute addition of another proposed amendment to the Moratorium at the June 26, 2018 Council meeting to prohibit projects involving removal of more than 500 cubic yards of material, days

30

after Randall Copp had inquired about a residential project involving a long driveway. Plaintiffs' suspicion that this amendment was motivated by bias against them is understandable. On the other hand, the Town Council did not accept the amendment. Thus, although the fact that the amendment was proposed might be viewed as supporting the Plaintiffs' bad faith targeting argument, the Council's rejection of the amendment points in the opposite direction.

Lastly, the Plaintiffs say that the Town's bad faith is proved by what they say is the fact that their application cannot comply with what they say is a discriminatory access road provision of the newly enacted Mineral Extraction Ordinance—a prohibition on a mineral extraction facility having a private access road that connects with a public street populated by more than 100 residences. It appears that the effect of the standard would be to deny a mineral extraction permit if the applicant's proposed private access road connects directly with a major public road (i.e. one with 100 or more residences along it) but not if the applicant's private access road connects with a short stretch of public street which in turn connects with the same major public road.[3]

For several reasons, the court is not prepared to assume on the present record that the provision at issue is discriminatory and intended to target Plaintiffs' proposed rock quarry. First, the validity of the provision is not before the court. Second,

---

[3] At oral argument, the Town indicated that the purpose of the 100-residence provision is to limit the number of private roads connecting with major public roads. If so, presumably the same prohibition would apply to all new development involving private roads, not just to private roads that lead to mineral extraction facilities.

Plaintiffs have not said whether they plan to pursue their application under the new version of the Mineral Extraction Ordinance. Also, the record is simply insufficient to enable the court to determine whether the inclusion of this standard in the new version of the Mineral Extraction Ordinance reflects bad faith or discriminatory intent.

*Conclusion*

For these reasons, the court concludes that the Plaintiffs are entitled to a declaratory judgment for purposes of Count II, but that the Town is entitled to judgment on Counts III and IV of the Second Amended Complaint. The declaratory judgment does not limit in any respect the Plaintiffs' ability to challenge any or all of the provisions of the recently enacted Land Use Ordinance. All the court has decided is that the Plaintiffs are not entitled to require the Town to consider Copp Equipment's application under the provisions of the pre-Moratorium Ordinance.

Accordingly, it is hereby ORDERED AND ADJUDGED AS FOLLOWS:

1) Judgment on Count II of the Second Amended Complaint is hereby granted to Plaintiffs CSG Properties, LLC and Copp Equipment, LLC. The court hereby declares as follows:

- The Town of Windham's emergency Moratorium and regular Moratorium, as amended and extended, upon the issuance of permits to mineral extraction projects and facilities were valid exercises of the Town's police power; were not enacted in bad faith and did not discriminate against Plaintiffs.

32

- Plaintiffs acquired no vested right to have Copp Equipment's application considered under the pre-Moratorium version of the Land Use Ordinance.

- The Town is not equitably estopped from applying the current version of the Land Use Ordinance to Copp Equipment's application.

- The Town is not required to consider Plaintiffs' application under the mineral extraction provisions of the pre-Moratorium version of the Land Use Ordinance.

2)     Judgment on Counts III and IV of the Second Amended Complaint is hereby granted to the Defendant Town of Windham.

3)     Due to the pendency of Count I, this is not an appealable final judgment. The Clerk will schedule a conference of counsel for discussion of the remaining aspects of this case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Partial Judgment by reference in the docket.

Dated August 12, 2019

A. M. Horton, Justice

Entered on the Docket: 8/14/19

33